## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| JAMES T. NEFF,<br>on behalf of plaintiff and a class,<br><br>Plaintiff,<br><br>vs.<br><br>COLLINS ASSET GROUP, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, James T. Neff ("Plaintiff") has requested that this Court enter an order determining that this action may proceed as a class action against defendant Collins Asset Group, LLC ("CAG"). This memorandum is submitted in support of that motion.

## I. NATURE OF THE CASE

### A.    FACTS

Exhibit A, a letter that CAG sent to Plaintiff, is a form letter it regularly uses. Exhibit A offered to settle a debt originally owed to Nissan Motor Acceptance Corporation, which went into default more than four years prior to the date of the letter.

The statute of limitations applicable to the collection of auto retail installment contract and lease debts is four years under sections 2-725 and 2A-506 of the Uniform Commercial Code. The Pennsylvania cites are 13 Pa.C.S.A. § 2725 and 13 Pa.C.S.A. § 2a506 Section 2-725 of the UCC, applicable to retail installment contracts, provides: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . ." Section 2A-506 of the UCC, applicable to leases, provides: "An action for default under a lease contract, including breach of warranty or indemnity, must be commenced within 4 years after the cause of action accrued. . . ."

Exhibit A attempts to collect on a time-barred debt without disclosing that fact to debtors. It also does not disclose the date of the transaction from which the debt arises. This is false, misleading, and deceptive under the Fair Debt Collection Practices Act ("FDCPA").

**B.     LAW**

In early 2012, the FTC entered into a consent decree with Asset Acceptance, one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC,* Case No. 8:12-cv-182-T-27EAJ (M.D. Fla.).

On October 1, 2012, the Consumer Financial Protection Bureau ("CFPB"), which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency, entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations . . . ." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28). The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that "settlement offers" that fail to disclose material information may be misleading.

On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf. The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012),

*American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that sending a collection letter offering settlement of a time barred debt without disclosing that the debt was time barred is misleading.

The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

Courts have likewise held that offering to settle time-barred debts without disclosure of that fact is misleading. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015). Courts have also found that class certification is appropriate on this claim. *Rawson v. Source Receivables Management, LLC*, 289 F.R.D. 267 (N.D.Ill. 2013); *Magee v. Portfolio Recovery Associates, LLC*, No. 12 C 1624, 2015 WL 535859 (N.D.Ill. Feb. 5, 2015).

## II.    THE PROPOSED CLASSES SATISFY FED.R.CIV.P. 23

Upon review of all of the relevant pleadings, facts and law, this Court should find that all requirements set forth by Fed.R.Civ.P. 23(a) and 23(b)(3) are met in this case.

### A. Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) noted that "no minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Accord, Williams v. Philadelphia*, 270 F.R.D. 208, 214-215 (E.D.Pa. 2010). A court "is permitted to accept common sense assumptions regarding numerosity." *De Lage Landen Financial Servs. Inc. v. Rasa Floors LP*, 269 F.R.D. 445, 460 (E.D.Pa. 2010).

CAG is a national debt collector.  The letters it sent to plaintiff (Exhibit A) is a form letter formatted with bar coding, which permits the letters to be mailed as a part of a bulk transaction with the U.S. Postal Service.  Further, CAG's website claims that " we work, as a 1st party servicer, with many credit grantors and regularly large volumes of accounts receivable." (See Exhibit B (excerpts from

website).) The fact that debts are typically sold in portfolios of similar type and vintage, not individually, also supports numerosity here.

Given the size and scope of its business, it is reasonable to conclude that the Rule 23(a)(1) requirement has been satisfied. The exact number of class members will be determined through further discovery, and plaintiff respectfully seeks time sufficient to conduct such discovery.

## B. Rules 23(a)(2) and 23(b)(3) – Commonality and Predominance

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Fed.R.Civ.P. 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. As found in *Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 264 (3d Cir. 2009), the commonality requirement of Fed.R.Civ.P. 23(a)(2) "does not require an identity of claims or facts among class members; rather, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." (Internal quotation marks omitted.)

Those common questions must predominate over individual issues under Fed.R.Civ.P. 23(b)(3). *Krell v. Prudential Ins. Co. of America*, 148 F.3d 283, 314-315 (3d Cir. 1998), in the context of a securities fraud claim, held that

the presence of individual questions does not *per se* rule out a finding of predominance. In particular, the "presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985).

*Accord, Sullivan v. DB Investments Inc.*, 667 F.3d 273, 299 (3d Cir. 2011); and *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 342 (3d Cir. 2011) (predominance requirement satisfied where "same set of core operative facts and theory of proximate cause apply to each member of the class"), and *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527-531 (3d Cir. 2004) (noting, *inter alia*, that "a finding of commonality does not require that all class members share identical claims").

Further, *Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 196-197 (W.D.Pa. 2006) relied upon *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), and held that the fact that "some individualized inquiry may be required with respect to causation or with respect to damages.... does not impugn the court's ability to certify a class for the purpose of deciding the common issues which underlie" the claims made in a case. *Zeno* went on to quote *Carnegie* directly:

Once [the question of liability] is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or

different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. [*Id.* (quoting *Carnegie* at 661 (internal citation omitted)).]

See *In re Community Bank of Northern Virginia*, 418 F.3d 277, 305-306 (3d Cir. 2005) ("although the calculation of individual damages is necessarily an individual inquiry, the courts have consistently held that the necessity of this inquiry does not preclude class action treatment where class issues predominate"), later decision *sub nom Drennan v. PNC Bank NA*, 622 F.3d 275, 284 (3d Cir. 2010). *Accord, Allen v. Holiday Universal Inc.*, 249 F.R.D. 166, 190 (E.D.Pa. 2008); and *Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D. 469, 482 (E.D.Pa. 2008).

In this case, the essential fact that links all class members is that each of them received a debt collection communication that violated the FDCPA by attempting to collect a time-barred debt without disclosing the time-barred nature of that debt. Each of them therefore has a claim under the FDCPA, which is the same claim held by each other member of that class.

## C. Rule 23(a)(3) – Typicality

*In re Insurance Brokerage*, 579 F.3d 241, 265 (3d Cir. 2009), held that Fed.R.Civ.P. 23(a)(3), is satisfied "'if the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established."

See *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) ("a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"). In the instant case, typicality is inherent in the class definitions. By definition, the members of the classes were subjected to the same practices as Mr. Neff, and can recover under the same legal theories as those relied upon by him.

### D. Rule 23(a)(4) – Adequacy of representation

*Beck v. Maximus* Inc., 457 F.3d 291, 296 (3d Cir. 2006) held that the adequacy requirement of Fed.R.Civ.P. 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent.... and] assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." (Internal quotation marks omitted.) Both of these considerations are satisfied here. Mr. Neff understands the obligations of a class representative, and has retained experienced counsel – as is indicated by Exhibits C, which sets forth Edelman Comb Latturner and Goodwin, LLC.'s counsel's qualifications. Further, both he and members of the classes seek money damages as the result of defendants' unlawful practices. Given the identity of

claims between Mr. Neff and the class members, there is no potential for conflicting interests in this action.

### E. Rule 23(b)(3) – Superiority

In this case there is no better method available for the adjudication of the claims that might be brought by each individual class member. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 615 (1997), held that certification would be appropriate if "a class action would achieve economies of time, effort, and expense, and promote... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." See *Hall v. Best Buy Co.*, 274 F.R.D. 154, 166 (E.D.Pa. 2011) ("the Court must balance, in terms of fairness and efficiency, the merits of a class against those of alternative available methods of adjudication" (internal quotation marks omitted)).

Given the scope of the problem posed by defendant's alleged misconduct, the economies to be gained by combine the claims of members of the classes into a single proceeding outweighs any conceivable problems posed by certification. Having scores of individual proceedings to decide the same issues of fact and law is not preferable to resolving these identical claims in a single proceeding.

## III. CONCLUSION

The proposed class meets the requirements of Fed.R.Civ.P. 23(a) and

23(b)(3). Plaintiff respectfully requests that this Court certify this action as a class

action.

Respectfully submitted,
Shenkan Injury Lawyers, LLC.

Richard Shenkan
PA Id. No. 79800
Shenkan Injury Lawyers, LLC.
6550 Lakeshore St.
West Bloomfield, MI 48323
T: (800) 601-0808 F: (888) 769-1774
rshenkan@shenkanlaw.com

Pro hac vice application to be submitted:
Cathleen M. Combs
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500 Chicago, Illinois 60603
T: (312) 739-4200 / F: (312) 419-0379
ccombs@edcombs.com

## CERTIFICATE OF SERVICE

I, Richard Shenkan, hereby certify that on November 13, 2015, I caused to be sent the forgoing documents to be filed with the Clerk of the Court. I further certify I shall cause to be served, as soon as service may be effectuated, a true and accurate copy of such filing via process server upon the defendants contemporaneously with the service of the class complaint.

SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan

# EXHIBIT A



**COLLINS**
ASSET GROUP, LLC

James T Neff

██████ PA █████████████

February 13, 2015

Mon – Thur 7:30 AM - 8:00 PM
Fri 7:30 AM - 4:00 PM
Last Sat. of every month 9:00AM - 1:00 PM
Closed Sunday
www.collinsassetgroup.com

A

| Date | Origination Date | Original Account # | Current Creditor |
|---|---|---|---|
| 02/13/2015 | 09/24/2008 | ███████████ | Collins Asset Group LLC |

| Reference | Original Creditor | Amount Due |
|---|---|---|
| ████████ | NISSAN MOTOR ACCEPTANCE CORPORATION | $3,763.72 |

### TAX SEASON OFFER LETTER

## 30% OFF

Current Balance: $3,763.72

Resolution Offer: $2,634.60

Pay 70% of your balance due and your obligation is taken care of

Offer Expires: **03/15/2015**

Remember, your payment by phone is always free of charge, so contact us at (888) 275-2588 and we will have agents standing by to take your call.

The resolution offer outlined in this letter is guaranteed through the referenced expiration date. It may be possible to extend the deadline under certain circumstances or if you call us by 03/15/2015. After this date, we reserve the right to modify this offer, or revoke it entirely. We are not obligated to renew this offer.

This offer is void if a previous agreement has been arranged. Please note that the Current Balance was calculated on **02/12/2015** and may vary due to no payments after that date.

This communication is from a debt collector. This is an attempt to collect a debt. Any information will be used for that purpose.

Sincerely,
Collins Asset Group, LLC

---

Please see reverse side for additional information

*** Detach Lower Portion And Return With Payment ***     1277-ECCOLL10-AGK0-08/22/14

Y180693922

P.O. Box 91059
Austin TX 78709-1059
RETURN SERVICE REQUESTED

IF YOU WISH TO PAY BY CREDIT CARD, CIRCLE ONE AND FILL IN THE INFORMATION BELOW.

MasterCard    VISA

| CARD NUMBER | | EXP. DATE |
|---|---|---|
| CARD HOLDER NAME | | CVV |
| SIGNATURE | AMOUNT PAID | |

February 13, 2015

Reference: ████████
Amount Due: $3,763.72
Phone: (888) 275-2588

**Personal and Confidential**
0020200024015328580315701150918-1R1–Y180693922 1277
1277
James T Neff
████ PA ███████████



Collins Asset Group, LLC
P.O. Box 91059
Austin TX 78709-1059

# GRAMM-LEACH-BLILEY PRIVACY ACT NOTICE

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). Federal laws require that we, along with financial institutions, explain to our customers what information we collect and how we disclose this information in order to provide our services, in order to meet these requirements, the following is our privacy statement.

In general, the categories of nonpublic personal information collected about you from your application, your educational institution, and consumer-reporting agencies, include your address and other contact information, demographic background, account and educational status, family income, Social Security number, employment information, collection and repayment history, and credit history.

We disclose nonpublic personal information to third parties only as necessary to service your account and as permitted by the Privacy Act of 1974. The Privacy Act permits disclosure to third parties as authorized under certain routine uses. Examples of disclosures permitted under the Privacy Act include disclosure to Federal and state agencies, private parties such as relatives, present and former employers, and creditors, and our contractors for purposes of administration of the student financial assistance programs, for enforcement purposes, for litigation, and for use in connection with audits or other investigations. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual user's ability to access and alter records within the systems. All users of these systems are given a unique user id with personal identifiers. All interactions by individual users with the systems are recorded.

# EXHIBIT B



Certification # C1402-1012-2014

**Integrity you can count on – Experience you can trust.**
**Contact Us: 855.528.1381**

| Main | About | Services | Consumer Info | Contact |

## Services

- *Great resources*: We work, as a 1st party servicer, with many credit grantors and regularly large volumes of accounts receivable.
- *Quality control*: We take pride in robust due diligence efforts, including the latest technology, analytics and compliance.
- *Flexible and responsive*: Our team is highly skilled and experienced and has the ability to make nimble decisions with the necessary financial resources to close transactions promptly.

Most other 1st party client-run call centers come ill-equipped and ill-prepared to be able to handle the sheer size of the varying call types that their operators may be required to field.

By utilizing some of the most cutting edge and advanced technology that is available to us within our industry, we are able to maintain a faster metabolism in our company and can offer an ironclad and guaranteed accounts receivable recovery process for creditors, consumers and commercial accounts.

We understand that income, and income on a steady basis, is absolutely vital for your company. By utilizing the services that Collins Asset Group, LLC provides, we can guarantee a steady level of generated income to buoy your company.

Collins offers strategic accounts receivable services to turn non-performing accounts receivable into cash. Whether you're a large originator or a boutique lender, we have the right solution for you.

Collins is a trusted resource for accounts receivable of all types, and we have extensive experience with 1st party accounts receivable for national, regional and state originators.

Collins Asset Group, LLC. © 2015 · Privacy Policy

# EXHIBIT C

# DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

Daniel A. Edelman declares under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 9 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Francis R. Greene, Julie Clark, Heather Kolbus, Cassandra P. Miller, Tiffany N. Hardy, and Catherine Ceko Charpie, and one associate.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2014 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Defense* (Ill. Inst. Cont. Legal Educ. 2008, 2011), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2013), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's

Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3.    **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010). Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995); *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); and *Tocco v. Real Time Resolutions*, ___ F.Supp.2d ___, 1:14CV810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014). She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Tenth Circuit Court of Appeals, and United States District Court for the District of Colorado. She is a member of the Northern District of Illinois trial bar.

4.    **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued over 30

appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5. **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago for the past few years, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin is also a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems. **Reported Cases.** *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11 C 4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, No. 09-1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002); *Romaker v. Crossland Mtg. Co.*, No. 94 C 3328, 1996 WL 254299, 1996 U.S.Dist. LEXIS 6490 (N.D.Ill. May 10, 1996); *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana. She is also a member of the Northern District of Illinois trial bar.

6. **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). Mr. Greene was Vice Chair of the Chicago Bar Association's Consumer Law Committee from 2010-11, and Chair from 2011-12. **Reported Cases:** *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 856 N.E.2d 389 (2006); *Johnson v. Thomas*, 342 Ill.App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); *Hale v. Afni, Inc.*, 08 C 3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07 C 824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D.Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05 C 3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D.Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *Pleasant v. Risk Management Alternatives*, 02 C 6886, 2003 WL 22175390 (N.D.Ill. Sept. 19, 2003). He is a member of the Northern District of Illinois trial bar.

7. **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v.*

*Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00 C 186, 2002 WL 31369747 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06 C 52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07 C 5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08 C 3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10 C 1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10 C 4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

8.   **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06-0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07 C 1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03 C 2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07 C 1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08 C 1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08 C 1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, No. 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

9.   **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, No. 08 C 780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11 C 524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

10.   **Tiffany N. Hardy** is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D. 2001). **Reported cases:** *Unifund v. Shah*, 407 Ill.App.3d 737, 946 N.E.2d 885 (1st Dist. 2011), later opinion, 2013 IL App (1st) 113658, 993 N.E.2d 518; *Tocco v. Real Time Resolutions*, 14cv810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014); *Balbarin v. North Star*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 5, 2011)(class certified); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d

249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Manlapaz v. Unifund*, 08 C 6524, 2009 WL 3015166, 2009 U.S. Dist. LEXIS 85527 (N.D.Ill. Sept. 15, 2009); *Matmanivong v. Unifund*, 08 C 6415, 2009 WL 1181529, 2009 U.S. Dist. LEXIS 36287 (N.D.Ill. Apr. 28, 2009); *Kubiski v. Unifund*, 08 C 6421, 2009 WL 774450, 2009 U.S. Dist. LEXIS 26754 (N.D.Ill. Mar. 25, 2009); *Cox v. Unifund CCR Partners*, 08 C 1005 (N.D.Ill. Dec. 4, 2008) (Report and Recommendation for Class Certification); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Cotton v. Asset Acceptance*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill. June 26, 2008) (class certified); *Ketchem v. American Acceptance Co.*, 641 F. Supp. 2d 782 (N.D.Ind. 2008); *D'Elia v. First Capital*, 07 C 6042, 2008 WL 4344571, 2008 U.S. Dist. LEXIS 22461 (N.D.Ill. Mar. 19, 2008). She is admitted in New York and the District of Columbia as well as Illinois.

11. **Catherine Ceko Charpie** is a graduate of Northwestern University (B.A. 2005) and DePaul University (J.D. *summa cum laude* 2008). **Reported cases:** *Vance v. Bureau of Collection Recovery, LLC*, 10 C 6324, 2011 WL 881550, 2011 U.S. Dist. LEXIS 24908 (N.D.Ill. March 11, 2011); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F.Supp.2d 929 (N.D.Ill. 2012); *Rawson v. Source Receivables Mgmt., LLC*, 11 C 8972, 2012 WL 3835096, 2012 U.S. Dist. LEXIS 125205 (N.D.Ill. Sept. 4, 2012).

12. **Associate: Emiliya Gumin Farbstein** is a graduate of the University of Illinois at Urbana-Champaign (B.S.B.A. 2006) and University of Minnesota Law School (J.D., magna cum laude, 2012).

13. The firm also has 10 legal assistants, as well as other support staff.

14. Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

15. **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003) (FDCPA coverage of debt buyers); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95 C 3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, No. 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94 C 3234, 1994 WL 649101 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425 (N.D.Ill., Jan. 31, 1995), later

opinion, 1995 WL 55255 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12 C 7235, 2013 WL 1858587 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, 13 C 621, 2013 WL 2467654 (N.D.Ill., June 7, 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 12 C 7328, 2013 WL 3270654 (N.D.Ill., June 26, 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11 C 7425, 2012 WL 1866542 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC*, 07 C 4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93 C 4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98 C 6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98 C 631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93 C 4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93 C 4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93 C 4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93 C 4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

16.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. Mr. Edelman argued it before the Supreme Court and Seventh Circuit. *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

17.     **Debtors' rights.** Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); z (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.*, 05 C 6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

18.    **Telephone Consumer Protection Act.** The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include: *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07 C 01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10 C 1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

19.    The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act. Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied*, 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12 C 9809 et al., 2014 WL 1089072 (N.D.Ill., Mar. 18, 2014), later opinion, 2014 WL 1304234 (N.D.Ill., March 31, 2014). The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

20.    **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.*, 11 C 4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012).

21.    Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

22.    **Class action procedure:** Important decisions include *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644 (Ill.Sup.Ct., October 22, 2015)(mootness),  and *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

23.    **Landlord-tenant:** The firm has brought more than 20 class actions against landlords to enforce tenants' rights. Claims include failing to pay interest on security deposits or commingling security deposits. Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

24.     **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, *In re Mortgage Escrow Deposit Litigation,* and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation,* as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB,* 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC,* 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.*, 99 C 4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99 C 6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton,* 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n,* 86 C 3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.*, 90 C 3708, 1991 WL 152533,, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94 C 45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91 C 4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90 C 5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation,* M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n,* 94 C 3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

25.     The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

26.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

27.     **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck,* 1:97cv11149 (D.Mass); *Fisher  v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services,* 230 F.3d 439  (1st Cir. 2000).

28.     **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.      Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b.      Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174,

668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94 C 2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

      c.     Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98 C 8111, 1999 WL 608714 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93 C 5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

      d.     Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93 C 6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).

      e.     Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

      f.     Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92 C 8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

      29.     These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

      30.     **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson et al v. Payday Financial LLC et al*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07 C 552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah*

*Loan Co.*, 99 C 2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99 C 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

31. **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

   a. Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96 C 117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

   b. The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

   c. Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

   d. Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

   e. Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

32. **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91 C 3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92 C 6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

33.  *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

34.  **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*,

377 Ill. App. 3d 642; 880 N.E.2d 205 (1ˢᵗ Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06 C 3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06 C 2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06 C 5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

35.     Some of the other reported decisions in our cases include: *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.*, 89 C 6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93 C 4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88 C 8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.*, 973 F.Supp.2d 905 (N.D.Ill. 2013).

36.     *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

37.     The hourly rates for the attorneys set forth below, are the same as the regular current rates charged for their services in other contingent matters in class action litigation. They are also consistent with fees charged to occasional hourly paying clients. The firm adjusts them annually to account for inflation and increasing experience and they are consistent with the rates charged by attorneys of comparable experience and expertise in the Chicago area. The rates listed and used in this case represent rates previously approved in a number of cases plus an annual adjustment.

38.     Examples of the approval of counsel's rates include:

        a.     The rates charged by Edelman, Combs, Latturner & Goodwin, LLC were used as a benchmark by Judge Kennelly in *In re Southwest Airlines Voucher Litigation*, No. 11 C 8176, 2013 WL 5497275 (N.D.Ill., Oct. 3, 2013), at 19-20:

        In particular, the Court has reviewed fee awards approved for the law firm of Edelman, Combs, Latturner & Goodwin, a Chicago law firm that has a long-established practice in the same field as Siprut, PC, the firm representing the plaintiff class in this case. Here are some examples. In *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 C 840, 2012 WL 3043687, at *1 (N.D. Ill. July 12, 2012), Judge Blanche Manning approved rates of $400 per hour for work done in 2011 by attorneys Daniel Edelman, Catherine Combs, and James Latturner, who had, respectively, thirty-six, thirty-six, and fifty years of practice experience. *Id.* at *1. In 2009, in the case of *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *20 (N.D. Ill. Dec. 9, 2009), Judge Robert Gettleman appears to have okayed a $550 rate for attorney Edelman. That same year, in *Jones v.*

*Ameriquest Mortg. Co.*, No. 05 C 432, 2009 WL 631617, at *4 (N.D. Ill. Mar. 10, 2009), Judge David Coar approved rates of $465 per hour for partners Latturner, Combs, and Tara Goodwin, and a rate of $250 per hour for an associate who was six or seven years out of law school during the relevant period. In 2008, Judge Sam Der-Yeghiayan approved rates of $450 per hour for partners at the Edelman firm and $210 per hour for the same associate. *See Hamm v. Ameriquest Mortg. Co.*, 549 F. Supp. 2d 1018, 1022 (N.D. Ill. 2008).

Just this week, the Court considered a fee award (a very modest one) in a case brought by the Edelman firm in which it obtained a default judgment. That firm submitted a very comprehensive affidavit by its lead partner, Daniel Edelman, supporting the following hourly rates claimed for each of its partners and associates:

- $550 for partners Edelman (thirty-seven years of experience), Combs (thirty-seven years), and Latturner (fifty-one years);

- $505 for partner Goodwin (twenty-two years);

- $445 for partners Michelle Teggelaar (sixteen years), Francis Greene (thirteen years), and Julie Clark (thirteen years);

- $400 for partner Heather Kolbus (eleven years);

- $355 for partner Thomas Soule (ten years);

- $230 to $290 for associates; and

- $100 to $125 for paralegals.

*See Quazi v. Lizetty and Assoc. Grp. LLC*, Case No. 13 C 4512, dkt. no. 19-5 (affid. of Daniel Edelman). This Court's own experience in dealing with fee awards (mostly agreed-upon awards) in consumer cases is generally consistent with a range bracketed on the higher end by the hourly rates proposed for lawyers from the Edelman firm in the *Quazi* case and, at the lower end, with the awards approved by Judges Der-Yeghiayan, Coar, and Gettleman in the cases cited earlier. The latter are, at this point, several years old, indicating that they may not actually represent appropriate current rates. . . .

        b.      Rates of $550 for Daniel A. Edelman and $230 for Cassandra P. Miller were approved in *Nadyenova v. Midland Funding, et al.*, 12-cv-632 (N.D.Ill.), on July 11, 2012. The order is attached as <u>Appendix A</u>.

        c.      Rates of $550 for Daniel A. Edelman, James O. Latturner and Cathleen M. Combs, $400 for former partner, Michelle R. Teggelaar, and $250 for former associate Jeremy P. Monteiro were requested in the Plaintiff's Final Approval Memorandum and approved in *Bruce v. Wells Fargo Bank*, 2:05cv243 (N.D.Ind.), on October 18, 2007 (Transcript of proceedings, <u>Appendix B</u>).

        d.      A rate of $325 for Ms. Hardy was approved by the Honorable Arthur D. Spatt at a fairness hearing in the Eastern District of New York in 2014, *Altagracia Diaz v. Residential Credit Solutions*, 12-cv-03781 (<u>Appendix C</u>).

39.     In determining the rates charged by the firm charges and requests, counsel consults surveys of rates charged by other Chicago law firms. Such surveys have been relied upon by courts in awarding fees. E.g., *FDIC v. Morris*, 1992 U.S. Dist. LEXIS 9439 (N.D.Ill., June 29, 1992); *Alliance to End Repression v. City of Chicago*, 1993 U.S. Dist. LEXIS 1972 (N.D.Ill., Feb. 22, 1993).

40.     I am reasonably confident that the rates are accurate, based on my personal knowledge of rates in the legal community, court awards, negotiations with defendants, and discussions with other attorneys.

41.     The rates we used are also consistent with fee awards by courts in this or other comparable areas for comparable work:

    a.     In *Harris N.A. v. Acadia Investments*, 09 C 6661, 2012 WL 1681985 (N.D.Ill., May 14, 2012) (Schenkier, M.J.), a commercial dispute in which the fees paid by plaintiff were shifted to the defendant pursuant to a contractual provision, the court awarded $775/ hour for a 1984 partner, $745/ hour for a 1985 partner, $700/ hour for a 1992 partner, and $570/ hour for a 1995 partner. Copies of the affidavits establishing these rates are in Appendix D.

    b.     In *Winston v. O'Brien*, 10 C 8218, 2013 WL 2897161 (N.D.Ill., June 13, 2013) (Bucklo, J.), a police excessive force case, court awarded $535/ hour for lead counsel, $450/ hour for a 1994 graduate, $225/ hour for a second year associate, and $125 /hour for paralegal work.

    c.     In *McDonough v. Briatta*, 06 C 2732, 2013 WL 1303800 (N.D.Ill., March 27, 2013) (Pallmeyer, J.), a First Amendment retaliation claim, the court awarded $500/ hour for 1964 and 1984 partners, $450/ hour for a 1993 graduate, $425/ hour for a 1999 graduate, $400/ hour for a 2001 graduate, $285/ hour for 2006 and 2007 graduates, and $100/ hour for paralegal time.

    d.     In *Scott v. Illinois Youth Center Joliet*, 09 C 1633, 2011 WL 586408 (N.D.Ill., Feb. 9, 2011), an individual employment discrimination case, Magistrate Judge Brown awarded $100/ hour for paralegal time, $250/ hour for an associate with 5 years experience, and $285-$390/ hour for attorneys with 12-18 years experience, noting that only limited justification had been provided.

    e.     In *Richardson v. City of Chicago*, 08 C 4824, 2012 WL 6185867 (N.D.Ill., Nov. 20, 2012) (Cole, M.J.), a police misconduct case, the court approved rates of $425/ hour for an attorney with 17 years experience, $400/ hour for an attorney with 9 years experience, $300/ hour for an attorney with 7 years experience, and $175/ hour for a second year associate.

    f.     In *Covington v. District of Columbia*, 839 F. Supp. 894 (D.D.C., December 13, 1993), Judge Lamberth found, on the basis of court-approved surveys of rates in the Washington, D.C., area, that it was appropriate to award $260 per hour to attorneys with between 11 and 19 years experience for the time period 1992-93. He further found that it was appropriate to have an annual increment of $10 per year or, alternatively, to multiply by 103.4% in accordance with the Consumer Price Index (the result is approximately the same). He also noted that it had been relied upon by six other District Judges in the District of Columbia and the Court of Appeals for the District of Columbia Circuit. Judge Lamberth awarded current rates for

all work done in the past, in lieu of making the award at the then-current rate and awarding interest on it.

g.     The figures used in the *Covington* case have been updated each year by the office of the U. S. Attorney for the District of Columbia. The updated figures (through 2013) are in the chart attached as <u>Appendix E</u>, available on the Internet site of the U. S Attorney's office ("Laffey Matrix", after *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)).

42.     The usual rates which I and the others in my firm charge at the present time are as follows:

a.     Daniel Edelman, Cathleen Combs, and James Latturner (partners): $700 an hour;

b.     Tara Goodwin (partner):  $600 an hour;

c.     Francis R. Greene and Julie Clark (partners):  $500 an hour;

d.     Heather Kolbus (partner): $500 an hour;

e.     Cassandra P. Miller (partner): $325 an hour;

f.     Tiffany N. Hardy (partner): $325 an hour;

g.     Catherine A. Ceko (partner): $290 an hour;

h.     Emiliya Gumin Farbstein  (associate): $230 an hour;

i.     Paralegals: $100-$125 an hour (based upon experience).

43.     All attorneys and legal assistants in my firm are required to and do in fact keep track of their time on a contemporaneous basis, on computer.  Everyone enters their time into a computer program, by case number.   The computer system automatically sorts the entries by case and generates totals.  Expenses are entered into the same computer program as they are incurred.

Executed at Chicago, Illinois.


/s/ Daniel A. Edelman
Daniel A. Edelman


EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)